37 P.3d 589

**Frederick B. GILES, M.D., Plaintiff–Appellee,**

v.

**Diana R. GILES, Defendant–Appellant.**

**Nos. 23652, 23863.**

Intermediate Court of Appeals of Hawai'i.

Nov. 21, 2001.

As Amended Jan. 25, 2002.

Arnold T. Phillips II, on the briefs, Honolulu, for Defendant–Appellant.

William C. Darrah, Honolulu, and Patricia M. Gustafson, on the briefs, for Plaintiff–Appellee.

BURNS, C.J., WATANABE and LIM, JJ.

Opinion of the Court by BURNS, C.J.

In appeal no. 23652, Defendant–Appellant Diana R. Giles (Diana) appeals from the "Order Granting Plaintiff's Motion to Dismiss Filed May 31, 2000, and Order Dismissing Defendant's Independ[e]nt Action for Relief from Judgment Entered December 30, 1993," entered by District Family Judge Diana Warrington on July 12, 2000 (July 12, 2000 Order). We vacate this order and remand for further proceedings consistent with this opinion.

In appeal no. 23863, Diana appeals from the "Order Re: Plaintiff's Written Motion for an Order Requiring Defendant to Furnish Security Filed 9–11–00," entered by District Family Judge Bode A. Uale on October 4, 2000 (October 4, 2000 Order). We vacate this order.

This appeal involves the following subjects: (1) the situation when a Hawaiʻi Family Court Rules (HFCR) Rules 12(b) and 12(c) motion is required to be treated as an HFCR Rule 56 motion for summary judgment; (2) the "independent action" mentioned in HFCR Rule 60(b); (3) two of the essential elements of res judicata and collateral estoppel; (4) the "fraud ... shall be stated with particularity" requirement of HFCR Rule 9(b); and (5) while the case is on appeal, the family court's action in the case pursuant to Hawaii Revised Statutes (HRS) Chapter 634J (1993).

## BACKGROUND

On October 15, 1963, Plaintiff–Appellee Frederick B. Giles, M.D. (Frederick), and Diana were married. Their first daughter was born on July 1, 1965; second daughter was born on August 12, 1966; third daughter was born on May 17, 1968; and a son was born on February 20, 1976.

On May 18, 1993, in *Giles v. Giles*, FC–D No. 93–1864, Family Court of the First Circuit, Frederick filed a complaint for divorce.

The court entered an order on August 6, 1993, which states, in relevant part, as follows:

3. Alvin Murphy, M.D. is appointed to serve as a Master for [Diana]. He shall provide periodic written reports of findings and recommendations to the Court regarding [Diana's] health. He shall evaluate, assess and provide services and treatment for [Diana] and he shall advocate [Diana's] best interests in mental health care and other medical services for [Diana]. All fees of the Master shall be paid by [Frederick], subject to the Court's reserving for further determination the ultimate allocation of these expenses as between [Frederick] and [Diana].

In a letter dated December 22, 1993, Dr. Murphy opined that Diana was "competent and able to execute her divorce settlement."

In FC–D No. 93–1864, the family court's Divorce Decree entered on December 30, 1993, approved and incorporated by reference the December 16, 1993 Agreement in Contemplation of Divorce between Frederick and Diana. The Gussin Chart filed by Frederick's attorney showed that Frederick was awarded a net value of $1,403,184 and Diana was awarded a net value of $2,075,000. The value awarded to Diana was a combination of the values of two real properties and a part of Frederick's profit sharing account.

In a letter dated March 8, 1994, to Diana's attorney, Dr. Murphy stated as follows:

Due to this patient's current mental condition, I do not feel she is currently competent to manage her divorce or her affairs. It is apparent she will soon be destitute unless there is some intervention. I think it would be in the patient's best interest to find her incompetent in the person and financially. I will be pleased to do whatever is necessary to help you protect her.

On March 14, 1994, Diana's attorney forwarded a copy of Dr. Murphy's March 8, 1994 letter to the family court judge handling the case.

On August 12, 1994, the family court entered a Qualified Domestic Relations Order regarding Frederick's retirement benefits in Radiology Associates Inc. Profit Sharing Plan.

On April 17, 2000, in FC–D No. 93–1864, Diana filed an Independent Action for Relief from Judgment Entered December 30, 1993.

On May 2, 2000, in FC–D No. 93–1864, Diana filed a First Amended Independent Action for Relief from Judgment Entered December [30], 1993, alleging, in relevant part, as follows:

5. [Frederick] has engaged in an all encompassing effort to hide, conceal, and defraud [Diana] out of various personal and real property in a variety of ways, including concealing materials [sic] facts and making false representations of a[sic] material facts regarding the property of the marriage. [Frederick] concealed these facts and made these false representations with the intent to deceive [Diana] and for the purposes [sic] of inducing [Diana] to act in reliance thereon.

6. Among others, [Frederick] filed the following documents in this Court on the dates indicated. [Frederick] knew that each and every document was false and [Frederick] filed them with the intent to mislead [Diana] and the Court:

a) Income and Expense Statements Filed August 10, 1993 and December 29, 1993;

b) Asset and Debts Statements filed December 29, 1993;

[c) ] Complaint filed May 18, 1993;

d) Answers to interrogatories submitted to [Frederick],

[e) ] False and/or misleading affidavit filed in the Family Court on June 15, 1993.

7. Particular material facts in these documents regarding the property of the marriage that [Frederick] either intentionally concealed or intentionally falsely represented with the intent to deceive, are as follows:

(1) [Frederick] failed to list either the fact or the value of $14,000.00 in Debentures that he owned relating to National Realty Limited Partnership on the Asset and Debt and Income and Expense filings.

(2) [Frederick] concealed the ownership and control of real property in the State of Hawaii and elsewhere that he either purchased or that was purchased on his behalf during the marriage and with marital assets, including but not limited to Lot 12, Block 10 Town of Stuart City (now Drexel), Missouri and 700 South Commercial, Harrisonville, Missouri; approximately 20 acres comprising the Willsey Addition in Harrisonville, Missouri; 987 Tahoe Blvd. Apt 306, Incline Village Nevada; Apartment 306 Tahoe Racquet Club, Incline Village, Nevada; Apt 307, Incline Village, Tahoe Racquet Club, Incline Village, Nevada; and 989 Tahoe Blvd. Incline Village, Nevada.

(3) [Frederick] concealed the fact that he sold real property that he purchased during the marriage with marital assets and that he held as a "single person";

(4) [Frederick] knew there was other property which might be deemed to [sic] property of the marriage even though [Frederick] claimed said property as his separate property;

(5) [Frederick] concealed at least three retirement and/or profit sharing and/or pension plans and has never provided an accounting of disbursements of the Radiology Associates, Inc. Profit sharing plan;

(6) [Frederick] filed or caused to be filed an estimate of value for Radiology Associates, Inc. that was misleading and diminutive and that understated his salary by approximately 50% or more. [Frederick] also neglected to incorporate salary bonuses paid to him from this medical practice;

(7) [Frederick] concealed [Frederick's] joint ownership with [Diana] of certain limited partnerships and concealed his ownership of said partnerships;

(8) [Frederick] voluntarily conveyed or transferred property of the marriage, real and personal, without the knowledge or consent of [Diana] with the intent to defeat the marital rights of [Diana];

(9) [Frederick] failed to list having an interest in Outpatient Radiology Physicians, Inc. on his Asset and Debt Statement dated December 29, [1993], although the Domestic Professional Corporation Annual Report indicates that F.B.Giles [sic] MD signed as president on December 22, 1993;

(10) [Frederick] scheduled the value of assets, including business interests and trust values, as unknown when in fact those values were susceptible to exact knowledge. In so doing, [Frederick] took advantage of the relation of trust and confidence between the parties concerning the financial dealings of the marital property, an area of the marriage that of which [Frederick] had superior knowledge, completely controlled to the exclusion of [Diana], and one in which [Frederick] held himself out in the marriage relationship as having superior knowledge.

. . . .

9. [Diana] had no reason to doubt the accuracy of the filings and answers that [Frederick] made during the course of the divorce proceedings, and [Diana] reasonably relied thereon, and upon [Frederick's] representations made under oath.

10. [Diana] now has information and reason to believe that there exists other properties, real and personal, and/or annuities and/or pension plans and/or partnerships and/or profit sharing plans and/or trusts which were fraudulently concealed from her and which have been fraudulently transferred out of her name both before the divorce and subsequently.

11. [Diana] discovered in 1999 that [Frederick] planned to initiate divorce proceedings for some years prior to the date he filed the divorce complaint and that he conducted a plan to fraudulently hide, conceal, and transfer out of the marital estate substantial personal and real property in order to prevent the fair and equitable distribution of all assets from the thirty year marriage.

12. [Diana] alleges upon information and belief alleges [sic] that property described in paragraph seven above may be

only a small amount of the property and assets controlled and fraudulently concealed by [Frederick], which may be valued in excess of several hundred thousand dollars, and which may include other real estate holdings in California, Hawai'i, and Missouri.

. . . .

15. [Frederick] has engaged in the aforesaid fraudulent acts and conduct knowingly, willfully, wantonly, oppressively, maliciously, in conscious disregard of [Diana]'s rights, and with the purpose and intent of attempting to injure [Diana], entitling her to punitive damages.

WHEREFORE [Diana] prays that this Court set aside the Divorce Decree entered December 30, 1993, enter a new Divorce Decree that includes a property division reflecting all of the marital property, award [Diana] her special damages according to proof, award [Diana] her general damages according to proof, and award [Diana] punitive damages for [Frederick]'s outrageous and malicious conduct, costs of suit, attorney's fees, and such other and further relief as this Court deems just and proper and/or as provided by [HRS], including, but not limited to prejudgment interest.

Further, [Diana] prays that the Court impress a trust upon or order the reconveyance of property held in the name of [Frederick] that was purchased with money or assets that belonged to [Diana] and order [Frederick] to restore to [Diana]'s property or interests in property that [Frederick] had obtained from [Diana] by fraud, duress, or otherwise, and to appoint a Receiver or Special Master to manage the affairs of [Frederick] during the pendency of these proceedings and for such further orders as the Court deems just and proper.

On May 31, 2000, Frederick filed Plaintiff's Motion to Dismiss. This motion cited HFCR Rule 7(b) (stating the requirements for motions), Rule 9(b) (requiring that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity"), Rule 12(b) (listing the defenses that may be made by motion), and

Rule 12(c) (permitting and describing motions for judgment on the pleadings). After a hearing on June 7, 2000, the court took the matter under advisement.

On June 8, 2000, Diana filed the Affidavit of Diana R. Giles stating, in relevant part, as follows:

2. The deed attached as Exhibit "A" is a true and accurate copy of the deed that I received [from] the Recorder of Deeds office in Cass County, State of Missouri. This property was bought by [Frederick] on December 16, 1993, as a single person. This transfer was recorded on February 14, 1994. This property was not listed in the Assets and Debt Statement that my ex-husband filed in this case.

3. The assumption agreement covering [Frederick]'s assumption of a $258,000 loan attached as Exhibit "B" is a true and accurate copy of the assumption agreement that I received from the Bureau of Conveyances State of Hawaii. This document concerns property known as 4191 Liholiho Street, Princeville, Kauai, HI. This property was not listed in the Assets and Debt Statement that my ex-husband filed in this case.

4. In the first quarter of 1994 my membership in the Outrigger Canoe Club was canceled. Before the divorce [Frederick] and I were members of this social club. The fees to become a member are in excess of $40,000.00. This property was not listed in the Assets and Debt Statement that my ex-husband filed in this case.

5. In the Department of Commerce and Consumers [sic] Affairs filing made for 1993 [Frederick] is listed as the president of a corporation named Outpatient Radiology Inc..[sic] Although this corporation is mentioned in a letter from the business manager for Radiology Associates, Inc. attached to responses to discovery in the divorce proceeding this property was not listed in the Assets and Debt Statement that my ex-husband filed in this case. Exhibit "C" is a true and accurate copy of the registration filing that I received from the DCCA.

6. There is a trust which is named the Giles Children's Trust d/t/d August 15,

1983, which was established to exist for ten years and six months terminating on February 15, 1994. This trust provided that [Frederick] and myself were settlors and that we were to receive the assets of the trust upon its termination via a reversionary interest. This trust maintained an account at the Hawaiian Trust Company being account nos. 115006751. This property was not listed in the Assets and Debt Statement that my ex-husband filed in this case. A true and accurate copy of this trust document is attached as Exhibit "D".

7. There is a trust which was named the Frederick Giles Residual Trust U/A d/t/d July 24, 1975, which held as an asset a Note Receivable from the Honolulu Medical Group for $138,654.71 which was due on January 6[,] 1996. This property was not listed in the Assets and Debt Statement that my ex-husband filed in this case.

8. There was a Radiology Associates Profit Sharing Plan FBO Frederick Giles at the Bishop Trust which had an account numbered 25701529 which was funded in 1993 as of March 31, 1993. A true and accurate copy of the first page of that account statement for the first quarter of 1993 is attached as Exhibit "E". Neither the existence of this account nor this property was listed in the Assets and Debt Statement that my ex-husband filed in this case.

9. On July 15, 1993, [Frederick] insured or paid taxes on the following properties. Any interest in these properties was not listed in the Assets and Debt Statement that my ex-husband filed in this case on June 12 or December 28, 1993:

A. 981 Fairways Blvd. Incline Village, Nevada. Hartford Insurance indicates that there was coverage on this property until July 15, 1993 policy number 70 RF 701772. Farmers Insurance Group policy 907338105 of [Frederick] insured this property until August 1, 1994.

B. 987 Tahoe Blvd. Unit # 306 Tahoe Racquet Club, Incline Village, Nevada. Hartford Insurance indicates that there was coverage on this property un-til July 15, 1993, policy number 70 RF 701772.

C. 987 Tahoe Blvd. Unit # 307 Tahoe Racquet Club, Incline Village, Nevada. Hartford Insurance indicates that there was coverage on this property until July 15, 1993, policy number 70 RF 701772.

D. 989 Tahoe Blvd., Incline Village, Nevada. Tax Assessment Notice for this property for 1991–1992 lists [Frederick] as the owner of this property.

10. On September 17, 1993, [Frederick] paid off the mortgage in the amount of $200,000.00 on the principal family residence at 2309 Ferdinand Ave., Manoa, Honolulu. However, the Asset and Debt Statement sworn to by [Frederick] dated June 12, 1993, states that there is no mortgage on this property. The Asset and Debt Statement sworn to by [Frederick] dated June 12, 1993, does not show any source for a payoff of this amount. See Exhibit "F".

11. In the Summer and Fall of 1993 I was an active alcholics [sic] suffering from symptomatic alcoholism. During that time [Frederick] sought and obtained the services of a Medical Master so that I could participate in my divorce litigation. In the Fall of 1993 I requested to be placed in an in-patient treatment program for my disease, but [Frederick] refused to pay for this. I was determined to be competent in a one sentence statement by the Medical Master in December 1993. The Medical Master appointment was cancelled at the end of December 1993 after the execution of my divorce papers at the request of [Frederick]'s counsel. In February 1994 I was found to be incompetent by the same doctor who had been appointed as the Medical Master. I am now a recovering alcoholic having been sober and totally abstain from alcohol for more than six years.

On June 9, 2000, the family court entered its order taking Frederick's motion under advisement.

On June 27, 2000, Diana filed a First Supplemental Affidavit of Diana R. Giles stating, in relevant part, as follows:

2. The [attached copy of a] transcript is a true and accurate copy of the proceeding on July 16, 1993.

3. [On July 16, 1993,] I was recovering from a[sic] assault and battery that I had received from [Frederick] in May of 1993 causing my hospitalization at Straub in May and early June 1993.

4. At this time [Frederick] had moved for a Guardian Ad Litem because of concerns over my mental and emotional health.

5. At this time I was being treated by Dr. Alvin Murphy, a psychiatrist. It was my understanding that Dr. Murphy had some concerns about my competency during this period.

6. At this time my lawyer had concerns about my competency and whether my status would fluctuate and change during the proceeding.

7. The testimony of Dr. Blase Harris at this hearing was that in May of 1993 I was not competent and that I should be hospitalized.

On July 12, 2000, the family court entered its "Order Granting Plaintiff's Motion to Dismiss Filed May 31, 2000, and Order Dismissing Defendant's Independ[e]nt Action for Relief from Judgment Entered December 30, 1993."

On August 11, 2000, Diana appealed the July 12, 2000 Order in appeal No. 23652.

On September 11, 2000, Frederick moved for an order requiring Diana to furnish security for appeal No. 23652, arguing that Diana met the HRS § 634J–1(1)(A) (1993) definition of a vexatious litigant.

On October 4, 2000, the family court granted Frederick's motion and awarded Frederick security of $60,000 on real property owned by Diana and placed a judicial lien for that amount on the property.

As a result of appeal No. 23652, the family court entered, on October 9, 2000, Findings of Fact and Conclusions of Law, in relevant part, as follows:

### FINDINGS OF FACT

. . . .

4. Between 1993 and 1999, [Diana] initiated four separate legal proceedings against [Frederick]. These legal proceedings included an FC–CR criminal spouse abuse proceedings [sic] filed in Family Court in 1993, an FC–DA domestic violence restraining order proceedings [sic] filed in Family Court in 1996, an FC–D proceedings [sic] filed in Family Court in 1996, and a civil proceedings filed in Circuit Court in 1999.

5. On May 17, 1993, [Diana] caused a criminal spouse abuse proceedings [sic] to be filed against [Frederick] . . . in FC–CR No. 93–2299. On October 7, 1994, the Family Court dismissed said proceedings with prejudice.

6. On May 15, 1996, [Diana] filed an ex parte petition for a temporary domestic abuse restraining order against [Frederick] . . . in FC–DA No. 96–0463. On June 17, 1996, the Family Court denied said petition.

7. On May 21, 1996, [Diana] filed a proceedings against [Frederick] in . . . FC–D No. 96–1767 which sought a redivision of all [Frederick's] and [Diana's] property, and an order requiring [Frederick] to pay alimony to [Diana]. On July 8, 1996, the Family Court dismissed said proceedings.

8. On December 21, 1999, [Diana] filed a verified complaint against [Frederick] in . . . Civil No. 99–4702–12 which sought in substance the same relief which [Diana] seeks in these proceedings. On March 31, 2000, the Circuit Court entered [a Stipulated Judgment] in favor of [Frederick] in said proceedings.

. . . .

15. The relief sought by [Diana's] Independent Action and . . . First Amended Independent Action is the same relief sought by [Diana] in both the 1996 Family Court FC–D proceedings filed by [Diana], and the 1999 Circuit Court proceedings filed by [Diana].

16. [Diana's] Independent Action and . . . First Amended Independent Action

include only unsubstantiated allegations that [Frederick] committed fraud on the Family Court in the 1993 divorce proceedings.

. . . .

18. In seeking dismissal, [Frederick] argued that:

(a) Having lost in Circuit Court, [Diana] cannot now sue [Frederick] in Family Court on the same allegations, and for the same relief, which [Diana] made and sought in Circuit Court.

(b) [Diana's] Independent Action and First Amended Independent Action include only unsubstantiated accusations that [Frederick] committed fraud on the Family Court in the 1993 divorce in violation of the [HFCR] 9(b) and 11 requirement that facts be specifically plead in proceedings alleging fraud.

(c) Although Hawaiʻi Family Court Rule 7(b)(2) and Rule 7(a) of the Rules of the Circuit Courts together state that *"(i)f a motion requires the consideration of facts not appearing of record, it shall be supported by affidavit,"* [Diana's] Independent Action and First Amended Independent Action include no meaningful supporting affidavits.

(d) Although Hawaiʻi Family Court Rule 7(b)(1) and Rule 7(a) of the Rules of the Circuit Courts require that all motions *"involving a question of law shall be accompanied by a memorandum in support of the motion,"* [Diana's] Independent Action and First Amended Independent Action include no supporting legal memorandum of any kind.

(e) While under Hawaiʻi Family Court Rule 15(a) the Family Court in its discretion could allow [Diana] to amend her existing defective pleadings, because [Diana] has already failed four times in an effort to plead a legally sufficient fraud case against [Frederick], leave to amend should not be granted.

(f) [Diana's] Independent Action and First Amended Independent Action

are barred by the doctrines of res judicata and collateral estoppel. [Diana's] Independent Action and First Amended Independent Action seek to set aside the Family Court's 1993 Divorce Decree. [Diana's] unsuccessful 1996 Family Court FC–D proceedings, and her unsuccessful 1999 Circuit Court proceedings, sought to set aside the 1993 Divorce Decree. [Diana] cannot in 2000 relitigate the same claims that she unsuccessfully raised in the 1996 Family Court FC–D proceedings, and in the 1999 Circuit Court proceedings.

### CONCLUSIONS OF LAW

. . . .

2. Hawaiʻi Family Court Rule 60(b) provides as follows. The "independent action" part of Rule 60(b) is underlined. *". . . This rule does not limit the power of a court to entertain an <u>independent action</u> to relieve a party from a decree, order, or proceeding, or to set aside a decree for fraud upon the court."*

3. The Hawaiʻi Intermediate Court of Appeals has held in *Hayashi v. Hayashi*, 4 Haw.App. 286, 292, 666 P.2d 171 (1983), that "[r]esort to the independent equitable action may be had only rarely and then only under unusual and exceptional circumstances," and that "[t]he purpose of the independent action is not to relitigate issues that were finally determined in a previous action between the same parties."

. . . .

5. Hawaiʻi Family Court Rule 7(b)(1) and Rule 7(a) of the Rules of the Circuit Courts require that all applications to the Family Court for relief which involve a question of law must be accompanied by a supporting legal memorandum.

6. Hawaiʻi Family Court Rule 7(b)(2) and Rule 7(a) of the Rules of the Circuit Courts require that all applications to the Family Court for relief which require the consideration of facts not appearing of record shall be supported by an affidavit signed by a person who

has knowledge of the facts and is competent to testify.

. . . .

8. Under Hawai'i Family Court Rule 12, a Family Court proceedings [sic] must be dismissed with prejudice if it appears to a certainty that no relief can be granted under any set of facts that can be proved in support of its allegations. . . .

. . . .

11. Having lost in Circuit Court, [Diana] cannot now sue [Frederick] in Family Court on the same allegations, and for the same relief, which [Diana] made, and sought, in Circuit Court.

12. The fact that, despite said requirements of [HFCR] 9(b) and [HFCR] 11, [Diana] has in multiple prior filings offered only unsubstantiated accusations of fraud by [Frederick] against the Family Court is proper grounds for the Family Court to conclude that [Diana] will be unable to prove a factual basis for her fraud claims.

13. While under Hawai'i Family Court Rule 15(a) the Family Court in its discretion could allow [Diana] to amend her pleadings, and while Rule 15(a) provides that such leave shall *"be freely given when justice so requires,"* it would be error to allow [Diana] a further opportunity to amend her pleadings. [Diana] has already made four failed efforts to plead a legally sufficient case to reopen the 1993 divorce. . . .

14. [Diana's] Independent Action and [Diana's] First Amended Independent Action are barred by the doctrines of res judicata and collateral estoppel. They seek to set aside the Family Court's 1993 Divorce Decree. [Diana's] unsuccessful 1996 Family Court FC–D proceedings, and also her unsuccessful 1999 Circuit Court proceedings, both sought to do exactly the same thing.

(Emphases in original.)

On November 3, 2000, in appeal No. 23863, Diana appealed the family court's October 4, 2000 Order.

As a result of appeal No. 23863, the family court, on December 13, 2000, entered its Findings of Fact and Conclusions of Law (FsOF and CsOL), in relevant part, as follows:

### FINDINGS OF FACT

. . . .

14. On April 26, 1996, [Diana] filed an action in the Circuit Court of the First Circuit against Marie Schlemmer, Bob Yee, Bank of Hawaii, [Frederick], Maile Giles, John Kingman, Thomas Hagan, William Patrick McGrath, John Harrison, and Philip Foster in Civil No. 96–0–001766. On August 19, 1996, the Circuit Court dismissed [Diana's] complaint.

15. On February 22, 1999, [Diana] filed an action in the Circuit Court of the First Circuit against Hawaiian Electric Company, Inc., . . . in Civil No. 99–0754–02. On February 8, 2000, the Circuit Court entered judgment against [Diana] in the case.

. . . .

17. [Frederick] has had to incur nearly $40,000.00 in legal costs to defend against the proceedings initiated against him in the Circuit Court in December 1999, and to defend against the proceedings filed against him in the Family Court on April 17 and May 2, 2000.

18. [Frederick] will probably incur at least another $10,000.00 in legal expenses to defend against the appeal taken by [Diana] from the Family Court's July 12, 2000 order.

. . . .

### CONCLUSIONS OF LAW

. . . .

4. [Diana] is a vexatious litigant. . . .

5. There is no reasonable probability that [Diana] will prevail in her appeal of the Family Court's July 12, 2000 order which dismissed the proceedings filed

by [Diana] on April 17 and May 2, 2000 with prejudice.

6. The Family Court has jurisdiction to consider [Frederick's] motion for an order requiring [Diana] to furnish security, notwithstanding that [Diana] has taken an appeal.

## DISCUSSION

### A.

### APPEAL NO. 23652

#### 1.

■ Diana contends that the family court erred in granting Frederick's motion to dismiss Diana's independent action without providing Diana the authorized amount of time to respond to the motion. We agree. The family court was required by HFCR Rules 12(b) and 12(c) to treat Frederick's motion as a motion for summary judgment and to afford Diana the time to respond authorized by HFCR Rule 56(c).[1]

Frederick's May 31, 2000 motion was a combination HFCR Rule 12(b) motion to dismiss and HFCR Rule 12(c) motion for judgment on the pleadings. As an HFCR Rule 12(b) motion to dismiss, it appears to allege only the HFCR Rule 12(b)(6) defense of a failure to state a claim upon which relief can be granted.

Frederick's May 31, 2000 motion asked the family court to take judicial notice of the following court documents filed/entered on the following dates in the following cases:

*State v. Giles*, FC–CR No. 93–2299, Family Court of the First Circuit, October 7, 1994, the Order Granting Defendant's Motion to Dismiss for Violation of Rule 48 of the Hawai'i Rules of Penal Procedure;

*Giles v. Giles*, FC–DA No. 96–0463, Family Court of the First Circuit, June 17, 1996, an order dissolving the restraining order entered on May 15, 1996;

*Giles v. Giles*, FC–D No. 96–1767, Family Court of the First Circuit, July 8, 1996, the Order Dismissing Complaint for divorce filed May 21, 1996; and

*Giles v. Giles*, Civil No. 99–4702–12, First Circuit Court, December 21, 1999, the Complaint and March 31, 2000, the Stipulated Judgment.

To this motion, Frederick attached copies of the court documents noted above and a copy of a February 7, 2000 letter from Coffelt Land Title, Inc., Harrisonville, Missouri, reporting the details of Frederick's purchases in 1993, 1994, and 1995 of various parcels of improved and unimproved land in Cass County, Missouri.

Frederick's motion concludes as follows:

In order to prevail on her motion, [Diana] must demonstrate fraud by clear and convincing evidence. The motion filed by [Diana] contains no credible evidence of fraud. Her allegations are contradicted by the facts contained in the Family Court record, and in the public record.

While the Family Court has the authority to allow [Diana] to again amend her motion under HFCR [Rule] 15(a), and while the Family Court also has the authority to treat [Frederick's] motion as an HFCR [Rule] 56(b) motion for summary judgment and schedule further hearing, and the submission of further affidavits, given [Diana's] historically demonstrated disregard for the rules and procedures of Family Court, and the fact that [Diana's] motion is the third legally insufficient legal filing in which she raises essentially the same issues, the Family Court should do the only right thing under the circumstances, and dismiss [Diana's] motion with prejudice.

Citing HFCR Rules 12(b) and 12(c), Diana argues that

Frederick presented matters outside the pleadings in his motion. As such, unless

---

1. Hawai'i Family Court Rules (HFCR) Rule 56(c) states, in relevant part, as follows:

**Motion and Proceedings Thereon.** The motion shall be filed and served not less than 18 days before the date set for the hearing. The adverse party may file and serve opposing memorandum and/or affidavits not less than 8 days before the date set for the hearing. The moving party may file and serve a reply or affidavit not less than 3 days before the date set for the hearing.

the Family Court excluded these exhibits from consideration, it should have treated the motion as provided under Rule 56(c), which requires that Frederick file and serve said motion not less than 18 days before the date set for the hearing.

In his June 7, 2000 Supplemental Memorandum in Support of Plaintiff's Motion to Dismiss, Frederick stated, in relevant part, as follows:

As reflected in the letter appended to [Diana's] June 6, 2000 memorandum, [Frederick] has already advised [Diana] that he does not seek to cause the Family Court to consider matters outside of the record in determining [Frederick's] motion. Rather, [Frederick's] motion to dismiss is grounded solely in the pleadings, and the record in these proceedings.

Specifically, [Frederick] does not ask the Family Court to accept the assertions in Exhibit 6 to his memorandum regarding Missouri properties, but rather has included the exhibit to emphasize the fact that when [Diana] alleged that [Frederick] committed fraud on the Family Court with respect to the ownership of real property in Missouri, she had an obligation to provide to the Family Court truthful information with respect to the public records concerning that real property, which obligation she did not satisfy.

The paragraphs quoted above contain contradictory statements. If the family court did not accept the assertions in Exhibit 6, it could not accept as a fact the allegation that Diana did not satisfy her obligation to provide the family court with truthful information. Moreover, in his Memorandum of Law filed with his May 31, 2000 Motion to Dismiss, Frederick thrice/three times cites "Exhibit 6" in support of his denial of certain of the specific allegations of Diana's independent action.

Generally, we will not ignore a filed document at the request of the party who filed the document. Even if Exhibit 6 is ignored, however, the family court was required, pursuant to HFCR Rules 12(b) and 12(c), to treat Frederick's motion as a motion for summary judgment because Frederick's request that judicial notice be taken of court documents filed in other cases within and without the scope of the family court's jurisdiction were matters outside the pleadings presented to and not excluded by the family court.

2.

Challenging FsOF nos. 15 and 18(f) and CsOL nos. 11 and 14, Diana contends that the family court was wrong when it concluded that Diana's independent action is barred by the doctrines of res judicata and collateral estoppel. We agree.

Frederick responds that

[i]f [Frederick's] motion to dismiss is construed as a motion for summary judgment, the Family Court's July 12, 2000 order granting [Frederick's] motion to dismiss should nevertheless still be granted. HFCR [Rule] 56(c) states that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

. . . .

. . . [Diana] cannot take genuine issue with the fact [that], as the Family Court found, [Diana's] failed 1996 FC–D proceedings, and her failed 1999 Circuit Court proceedings, sought the same relief as her independent action.

In other words, Frederick contends that, as a matter of law, the actions by the family court in FC–D No. 96–1767 on July 8, 1996, and by the circuit court in Civil No. 99–4702–12 on March 31, 2000, bar Diana's independent action. We disagree.

■ Two of the essential elements of res judicata and collateral estoppel are (a) a final judgment on the merits, *Dorrance v. Lee*, 90 Hawai'i 143, 148–49, 976 P.2d 904, 909–10 (1999), (b) by a court of competent jurisdiction, *Ryan v. Ryan*, 257 Neb. 682, 600 N.W.2d 739 (1999); 46 Am.Jur.2d, *Judgments* § 571 (1994).

■ In FC–D No. 96–1767, on July 8, 1996, the family court entered an Order Dis-

missing Complaint because the complaint was a complaint for divorce and the parties had previously divorced and were not then married. The complaint was not "an independent action to relieve a party from a judgment, order, or proceeding, or to set aside a judgment for fraud upon the court." Moreover, the complaint was dismissed for lack of subject matter jurisdiction. A dismissal of a claim for lack of subject matter jurisdiction is not an adjudication on the merits. 46 Am.Jur.2d, *Judgments* § 607 (1994); HFCR Rule 41(b).[2]

In Civil No. 99–4702–12, on March 31, 2000, the circuit court entered a Stipulated Judgment "in favor of [Frederick] and against [Diana], as to all claims[.]" Diana explains this action as follows:

This leaves only the question of why the parties entered into a stipulated judgment rather than a stipulated dismissal. Again, had Diana the opportunity, she would have proffered affidavits from [counsel] that they believed that [Frederick's] motion to dismiss introduced matters outside the pleadings and therefore was properly deemed a motion for summary judgment. Thus, they believed that a stipulated judgment was the proper vehicle to meet their common goal, which was to dismiss the Circuit Court action so that Diana could refile and proceed with her claims in Family Court.

Diana's explanation is inconsequential. A judgment on the merits is a judgment on the merits and not a dismissal for lack of subject matter jurisdiction no matter what the par-

---

2.  HFCR Rule 41(b) states, among other things, that "[u]nless the court in its order for dismissal otherwise specifies, a dismissal . . ., other than a dismissal for lack of jurisdiction . . ., operates as an adjudication upon the merits."

3.  We note, in passing, that the March 31, 2000 Stipulated Judgment was preceded by a letter agreement between the attorney for Defendant–Appellant Diana R. Giles (Diana) and the then attorney for Plaintiff Appellee Frederick B. Giles (Frederick) stating, in relevant part, as follows:

    Pursuant to our phone conversation, I enclose for your review and execution a Stipulated Judgment in the above-referenced action. If it meets with your approval, please sign it and return it to me. I will sign it, file it, and provide you with a file-stamped copy.

ties intended. However, in Civil No. 99–4702–12, the circuit court did not have subject matter jurisdiction to decide Diana's independent action to relieve Diana from, or to set aside for fraud on the court, the December 30, 1993 Divorce Decree. Only the family court had such subject matter jurisdiction. HRS § 580–1 (1993). Therefore, the circuit court's action in Civil No. 99–4702–12 is not a bar to the family court's action with respect to Diana's instant independent action.[3]

### 3.

Challenging CsOL nos. 3, 5, and 6, Diana contends that the family court erred in concluding that Diana's independent action is both substantively and procedurally deficient.

Diana argues that an independent action is "not subject to the formalities of motions, as set forth in [Hawai'i] Family Court Rule 7(b)(1) and Circuit Court Rule 7(a)." She relies on the rule that

a complaint ought not be dismissed with prejudice "unless it appears to a certainty that no relief can be granted under any set of facts that can be proved in support of its allegations." *Hayes v. Nagata,* 68 Haw. 662, 666, 730 P.2d 914, 916 (1986) (quoting *Giuliani v. Chuck,* 1 Haw.App. 379, 385, 620 P.2d 733, 737 (1980) (citation omitted)).

Frederick responds that

[Diana] offers no legal basis upon which to assert that [Diana's] independent action is not subject to HFCR [Rule] 7(b) and Circuit Court Rule 7(a), and there is none. The Family Court Rules do not exempt an HFCR [Rule] 60(b) independent action

When we spoke, we agreed that this Stipulated Judgment would nevertheless allow you to proceed by motion or equitable action in Family Court to set aside the Divorce Judgment entered in FC–D No. 93–1864. However, the Stipulated Judgment will preclude all relief other than the above-mentioned relief in Family Court.

We also agreed that all fees and costs incurred by [Frederick] and [Diana], respectively, in the civil action arise from and relate to the same issues that will be pursued in any action that [Diana] files in Family Court. Therefore, all fees and costs incurred in the civil action will be the proper subject of any award of attorneys' fees and costs which may be made in the Family Court proceeding.

from the form requirements of HFCR [Rule] 7(b) and Circuit Court Rule 7(a).... Pursuant to HFCR [Rule] 7(b)(1) an application to the Family Court must be made by a motion in compliance with HFCR [Rule] 7(b). The Family Court correctly found that [Diana's] independent action did not satisfy the requirements of HFCR [Rule] 7(b) and Circuit Court Rule 7(a).

■ We disagree with Frederick and agree with Diana. Frederick erroneously concludes that Diana's independent action is "an HFCR [Rule] 60(b) independent action[.]" That is not what it is. HFCR Rule 60(b) states that "[t]his rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to set aside a judgment for fraud upon the court." Clearly, HFCR Rule 60(b) does not encompass, excludes from its scope, and does not prohibit, such an independent action. Clearly, an "independent action" is not a motion.

Part of the misunderstanding in this case was caused when Diana filed a First Amended Independent Action for Relief from Judgment Entered December 30, 1993, in FC–D No. 93–1864, the divorce case. Diana should have filed a new "independent action" and the family court should have given it a new case number such as "FC–SP No. 1[.]"

4.

Challenging FOF no. 16 and CsOL nos. 8, 12, 13, Diana contends that the family court erred in concluding that Diana's independent action was not pleaded with particularity and in dismissing the action with prejudice. In the opening brief, Diana states, in relevant part:

To the best of Diana's understanding of the [FsOF and CsOL], the court concluded that Diana's independent action is improper under [HFCR] 9(b) and 11; the independent action contains only unsubstantiated allegations; and that Diana's prior court actions provide a basis for concluding that she will be unable to prove fraud in her present action and therefore the court will not allow her to amend her pleading.

HFCR Rule 9(b) states in pertinent part that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Diana contends that she "clearly pleaded fraud with the requisite particularity to meet the requirements of Rule 9(b)." She further contends that FOF no. 16 applies the wrong standard:

[T]he Family Court was required to accept "the plaintiff's description of what happened along with any conclusions that can reasonably drawn therefrom[.]" *Moore v. Allstate Ins. Co.*, 6 Haw.App. 646, 650, 736 P.2d 73, 77 (1987) (citing 5 Wright & Miller, *Federal Practice and Procedure: Civil* § 1357 (1969)).

In Diana's view, "the court's finding that the [sic] Diana's independent action contains only unsubstantiated allegations is irrelevant to whether her pleading states a claim for relief."

Frederick responds that

[Diana's] affirmative election to sue [Frederick] in Circuit Court in 1999, and not sue [Frederick] in Family Court, on the same allegations [Diana] is now making in Family Court, could be construed as an admission by [Diana] that her present claims in Family Court indeed have no merit.

We agree with Diana and disagree with COL no. 12 and Frederick. FOF no. 16 is generally true of every complaint when it is filed. After the complaint is filed, substantiation by affidavit, etc., may be required in response to an HFCR Rule 12(b) motion or an HFCR Rule 56 motion for summary judgment. Substantiation satisfying the burden of proof will be required at the trial.

■ In response to Frederick's argument, we conclude that Diana's affirmative election to sue Frederick in circuit court in 1999, and not sue Frederick in family court, on the same allegations Diana is now making in family court, cannot *reasonably* be construed as an admission by Diana that her present claims in family court indeed have no merit.

Frederick contends that

[t]he Family Court has found [Diana] to be a vexatious party litigant within the meaning of [HRS] Chapter 634J. [Diana] has

now initiated yet another Family Court proceeding seeking substantially the same relief as [Diana] previously sought in both a failed prior Family Court proceeding, and a failed prior Circuit Court proceeding. By now, if she had facts to support her claims, she should have plead [sic] them. Instead, she again offers "only unsubstantiated accusations." In such circumstances, the Family Court's order of dismissal with prejudice is clearly appropriate.

This argument lacks merit. The family court did not find Diana to be a vexatious litigant until after Diana filed a notice of appeal in appeal No. 23863. Assuming Diana is a "vexatious litigant" as defined in HRS § 634J–1 (1993), she may be ordered to furnish security, HRS § 634J–4 (1993), or be prohibited from filing any new litigation without first obtaining leave of the presiding judge, HRS § 634J–7 (1993). Except as specified in HRS § 634J, there is no difference between the rights of a vexatious litigant and a non-vexatious litigant. Nothing authorizes the family court to ignore or violate the applicable rules when dealing with a complaint validly filed by a vexatious litigant. The HFCR apply equally to vexatious and non-vexatious litigants who have validly filed a complaint. The applicable rules do not require Diana to plead "substantiated allegations" or "substantiated accusations."

In all of her averments of fraud, Diana is required to state the circumstances constituting fraud with particularity. We conclude that at least with respect to some of her averments of fraud, Diana has satisfied the particularity requirement.[4] We leave it to the family court to decide in the first instance which averments satisfy the particularity requirement and which do not and whether Diana will be permitted to again amend her pleading as to those which do not or to add others. Whether Diana's averments can survive Frederick's motion treated as a motion for summary judgment will be decided when, after Diana is afforded the

authorized time to respond to Frederick's motion treated as a motion for summary judgment, the family court hears and decides Frederick's motion in conformity with the applicable rules.

### B.

### APPEAL NO. 23863

As noted above, in appeal No. 23652, Diana appeals the July 12, 2000 Order on August 11, 2000. In appeal No. 23863, Diana appeals Judge Uale's October 4, 2000 Order, and some of the December 13, 2000 FsOF and CsOL.

HRS § 634J–2 (1993) states as follows:

> **Motion for order requiring plaintiff to post security.** In any litigation pending in any court of this State, at any time until final judgment is entered, a defendant may move the court, upon notice and hearing, for an order requiring the plaintiff to furnish security. The motion must be based upon the ground, and supported by a showing, that the plaintiff is a vexatious litigant and that there is no reasonable probability that the plaintiff will prevail in the litigation against the moving defendant.

While Diana's independent action was pending in the family court, Frederick did not move for an order requiring Diana to furnish security. Frederick did not move for such an order until after Diana had appealed the family court's July 12, 2000 Order. FOF no. 5 is the family court's answer to the part of HRS § 634J–2 requiring Frederick to show that there is no reasonable probability that Diana will prevail in the litigation against Frederick. By that time, "the litigation" was Diana's appeal. Obviously, that is a question better answered by the appellate court than the family court.

Citing the part of HRS § 634J–2 that allows a defendant, "at any time until final judgment is entered," to file a motion for

---

**4.** In his May 31, 2000 Memorandum of Law that accompanied his May 31, 2000 Plaintiff's Motion to Dismiss, Frederick stated that "the vast bulk of [Diana's] HFCR [Rule] 60(b) fraud allegations are hopelessly general and vague." He then went on to list "[t]he assets which [Diana] specifically alleges were concealed at the time of the divorce" and to explain as to each asset why her allegation has no basis in fact.

order requiring plaintiff to post security, Frederick contends that his motion was authorized. In his view, "[b]ecause of [Diana's] appeal, final judgment has not entered in these proceedings." We disagree. In Hawai'i, courts at the trial level (including family courts) enter final judgments. The fact that such final judgments are appealable or appealed does not diminish their finality.

■■ "As a general rule, the filing of a valid notice of appeal transfers all jurisdiction in the case to the appellate court and deprives all family courts of jurisdiction to proceed further in the case, except for some matters." *In re Doe,* 81 Hawai'i 91, 98, 912 P.2d 588, 595 (App.1996). We conclude that HRS § 634J–2 matters are not exceptional matters. Therefore, we further conclude that while a family court case (including an independent action) is on appeal, the family court has no jurisdiction to act in the case on appeal pursuant to HRS Chapter 634J 2 (1993) absent prior permission by the appellate court having jurisdiction over the appeal. Therefore, the family court lacked jurisdiction to enter the October 4, 2000 Order and the December 13, 2000 FsOF and CsOL.

## CONCLUSION

Accordingly, in appeal No. 23652, we vacate the July 12, 2000 "Order Granting Plaintiff's Motion to Dismiss Filed May 31, 2000, and Order Dismissing Defendant's Independ[e]nt Action for Relief from Judgment Entered December 30, 1993," and the following of the October 9, 2000 Findings of Fact and Conclusions of Law: CsOL nos. 5, 6, 11, 12, 13, and 14.

In appeal No. 23863, we vacate the October 4, 2000 "Order Re: Plaintiff's Written Motion for an Order Requiring Defendant to Furnish Security Filed 9–11–00," and the December 13, 2000 Findings of Fact and Conclusions of Law.

We remand for further proceedings consistent with this opinion.